IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH
NORTHERN DIVISION

| | |
|---|---|
| PURE ENERGY CLUB, LLC D/B/A PUR3X,<br><br>Plaintiff,<br><br>vs.<br><br>JP WILLIAMS, et al.,<br><br>Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AND VENUE AND DENYING DEFENDANTS' REQUEST FOR TRANSFER AND DENYING MOTION TO STRIKE<br><br>1:10-CV-74 TS |

Before the Court is Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and for Improper Venue, or, Alternatively, to Transfer to a District Court in Georgia. Plaintiff requests, in its opposition, the right to conduct expedited jurisdictional discovery, and further requests that the Court award attorney fees for the time spent responding to Defendants' Motion to Dismiss. After reviewing the parties' respective memoranda, the Court will deny Defendants' Motion to Dismiss as well as their Motion to Transfer. Furthermore, the Court will deny Plaintiff's requests for expedited jurisdictional discovery because sufficient evidence has been submitted to demonstrate that jurisdiction in Utah is proper. Moreover, the Court will deny Plaintiff's request for attorney fees on procedural grounds because Plaintiff has not filed a separate motion to request attorney fees.

# I. INTRODUCTION

Defendants allege that this case should be dismissed under Fed.R.Civ.P 12(b)(2) because this Court lacks personal jurisdiction over them. Defendants argue that the forum selection clause in Plaintiff's policies and procedures is unenforceable; that even if the forum selection clause was enforceable, they did not agree to it; and that their contacts with Utah are insufficient to establish personal jurisdiction. Furthermore, Defendants contend that this case should be dismissed for *forum non conveniens* under Fed.R.Civ.P 12(b)(3) because the forum selection clause is unavailing and they did not agree to it. Even if it were enforceable, Defendants claim that the case should be dismissed because all Defendants reside in Georgia and their alleged actions giving rise to the claims of this case did not occur in Utah. Alternatively, Defendants argue that, under 28 U.S.C. § 1404(a), the Court should transfer this case to a district court in Georgia for reasons of fairness and convenience.

In a separate motion, Defendants have asked the Court to strike paragraphs 2, 4-16, and Exhibit A of the Declaration of Andrew Rinehart, who is the owner of Plaintiff.[1] In Plaintiff's response, Plaintiff attached a First Amended Affidavit of Andrew Rinehart to "clarify some the objections Defendants" made to the original affidavit.[2] The Court will deny Defendants' Motion to Strike paragraphs 2, 5-7, 9, 11-15, and 17-18 of Plaintiff's First Amended Affidavit and Exhibit A of the original affidavit, but disregard the above-referenced paragraphs and Exhibit A. Therefore, only paragraphs 1, 3, 4, 8, 10, and 16 of the First Amended Affidavit will be considered in determining jurisdiction and venue in this analysis.

---

[1] Docket No. 7, Ex.1, ¶ 3.
[2] Docket No. 17, Ex. 1.

## II. BACKGROUND

Defendants JP Williams ("JP"), Hannah Williams ("Hannah"), and Tommy Trawick ("Trawick") are all residents of Dry Branch, Georgia. Defendant T & W, LLC ("T & W"), is a Georgia corporation with its principal place of business in Georgia.

Plaintiff Pure Energy Club, LLC, which does business as Pur3X ("PEC"), is a limited liability Utah corporation with its principal place of business in Utah.

In order to become a distributor for PEC, one must fill out and submit PEC's online Distributor Agreement.[3] The Distributor Agreement contains a Statement of Policies and Procedures, which includes both the disputed forum selection clause (Section 9.3) and a separate provision allegedly prohibiting distributor contracts filled out and submitted by third parties on behalf of potential new distributors (Section 4.30). The forum selection clause reads:

> In the event of any claim or dispute between the Company and Distributor that arises out of or is related to the Agreement, the parties agree that jurisdiction and venue shall lie exclusively before the State or Federal Courts residing in Davis County or Salt Lake County, State of Utah . . . Each party to the litigation shall be responsible for its own costs and expenses of litigation, including legal and filing fees.[4]

Section 4.30, entitled "Sponsoring Online," reads:

> When sponsoring a new Distributor through the online enrolment process, the Sponsor may assist the applicant in filling-out the online application materials. However, the applicant must personally review and agree to the online application and agreement terms and conditions, Pure Energy Club's Policies and Procedures, and the Pure Energy Club Compensation Plan. *The Sponsor may not fill-out the online application and agreement on behalf of the applicant or agree to these materials on behalf of the applicant.*[5]

JP and Trawick were enrolled as distributors by Jeremy Hamilton ("Hamilton"), a Georgia resident, who took their personal information over the telephone, put it into his

---

[3] Docket No.6, Ex. 6.
[4] Id. § 9.3.
[5] *Id. § 4.30 (emphasis added).*

computer, and then submitted the information to PEC as part of an online enrollment. Defendants allege that at no time during these phone conversations did Hamilton inform JP and Trawick about any contract terms and conditions included in the online enrollment agreement, nor did he read to them any provision that indicated they were agreeing and consenting to jurisdiction in Utah.

JP, Trawick, and Hannah had "downline" organizations consisting of subsidiary distributors all residing in Georgia. The "downline" distributors were presumably recruited by Defendants to secure a percentage of their profits from sales of PEC product.

Plaintiff alleges that JP, prior to becoming a distributor, telephoned PEC's customer service department five times to inquire about shipment of products. These calls lasted approximately two to three minutes. Plaintiff claims that PEC's owner, Andrew Rinehart ("Rinehart"), located in Utah, was in almost daily contact with JP. However, according to Defendants, neither JP nor his downline organization has sold any PEC product, nor has JP purchased any product from PEC. Defendants further allege that JP has not received commission checks or other personal income from PEC, nor has he conducted any business in Utah. Plaintiff claims that JP received an award onstage from Rinehart in Atlanta, and JP appeared in a video promoting Pur3X products and services on YouTube, which video JP posted. PEC terminated JP's distributorship on March 17, 2010.

Defendant Trawick is a manager and member of Defendant T & W. As a distributor for PEC, Trawick was enrolled in the company's "auto-ship" program, which required him to purchase approximately $150 of PEC product per month. Trawick alleges that this product was shipped from a plant located in Memphis, Tennessee, and arrived at Trawick's residence in Georgia.

Approximately January 2010, Trawick claims to have called a customer service representative at PEC's home office and requested a transfer of his downline organization to T & W. T & W subsequently became a distributor without any application being signed or submitted. Trawick claims to have earned a few thousand dollars in commissions as a distributor before PEC terminated his distributorship on March 17, 2010.

Defendant Hannah Williams, wife to JP Williams, became an independent distributor for PEC by filling out PEC's online application and submitting the application to PEC. Hannah claims that she was enrolled on the same "auto-ship" program as Trawick, receiving $150 of PEC per month at her residence in Georgia.

In January and February 2010, Hannah sent approximately five emails to PEC's owner, Rinehart, containing information regarding sponsoring new distributors in PEC. Hannah claims to have earned a couple thousand dollars in commissions as a distributor before PEC terminated her distributorship on March 17, 2010.

JP and Hannah Williams allege that since March 17, 2010, they have been unemployed and have earned zero income, and Trawick states that he does not have sufficient resources to litigate in Utah and that to do so would be a substantial financial burden on him and his company, T & W.

## III. DISCUSSION

A party may consent to personal jurisdiction and venue by agreeing to a forum selection clause contained in a contract.[6] Absent an enforceable forum selection clause, the Court may still exercise personal jurisdiction over Defendants if it can be said that the Defendants, based on their activities in the forum state, "should reasonably anticipate being haled into court there."[7]

---

[6] *Burger King v. Rudzewicz,* 471 U.S. 462, 473 (1985).
[7] *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980).

Even if personal jurisdiction is established, the Plaintiff has the burden of showing that venue is proper under 28 U.S.C. §1391(a); otherwise Defendants' motion to transfer to another district may be granted if requirements of 28 U.S.C §1404(a) are met. Therefore, the following will be addressed in sequence: A) whether PEC's forum selection clause is enforceable and hence dispositive of jurisdiction and venue; B) whether, absent an enforceable forum selection clause, specific personal jurisdiction can be exercised over Defendants; and C) whether venue is appropriate or, alternatively, transferable.

A.) Forum Selection Clause

PEC's forum selection clause is binding on all Defendants. Forum selection clauses are "prima facie valid."[8] However, whether a forum selection clause is dispositive as to a party's consent to personal jurisdiction and venue depends upon the clause's express language. Forum selection clauses are labeled either permissive or mandatory depending on certain words they employ.[9] Permissive forum selection clauses contain language that is non-exclusive and discretionary with regard to a particular jurisdiction and/or venue.[10] Mandatory forum selection clauses, on the other hand, include terms indicating exclusive jurisdiction and/or venue, such as "only," "sole," or "exclusive."[11] While permissive forum selection clauses are not enforceable, mandatory forum selection clauses will be enforced "unless enforcement is shown by the resisting party to be unreasonable under the circumstances."[12]

The forum selection clause contained within Plaintiff's Policies and Procedures is mandatory. It provides that "jurisdiction and venue shall lie *exclusively* before the State or

---

[8] *Milk 'N' More, Inc. v. Beavart,* 963 F.2d 1342, 1346 (10th Cir. 1992).
[9] *See K & V Scientific Co., Inc. v. BayerischeMotorenWerkeAtiengesellschaft ("BMW")*, 314 F.3d 494, 498 (10th Cir. 2002) (citing *Excell Inc. v. Sterling Boiler & Meek, Inc.*, 106 F.3d 318, 320 (10th Cir. 1997)).
[10] *Waste Services, LLC v. Red Oak Sanitation*, 2008 WL 2856459, at *2 (D.Utah July 23, 2008).
[11] *Id.*
[12] *Milk 'N' More, Inc,.* 936 F.2d at 1346.

Federal Courts residing in Davis County or Salt Lake County, State of Utah."[13]  As such, the forum selection clause indicates exclusive, non-discretionary jurisdiction and venue.  Therefore, Plaintiff's forum selection clause must be enforced unless Defendants can prove that enforcement is unreasonable.

Defendants argue that enforcement of PEC's forum selection clause is unreasonable under the circumstances.  Defendants assert that while Hannah filled out and submitted a distributor agreement on her own, JP, Trawick, and T & W's enrollment as distributors violated Plaintiff's Policies and Procedures,[14] and there is no rational nexus between these Defendants and Utah.  Because this Court's rational nexus analysis is encompassed by its analysis of personal jurisdiction, it will confine its response to Defendants' first contention, that PEC's own terms and conditions preclude enforcement of its forum selection clause in this instance.

Violation of PEC's Policies and Procedures

Section 4.30 of PEC's distributor agreement provides, in relevant part, that a "[s]ponsor may not fill-out the online application and agreement on behalf of the applicant or agree to these materials on behalf of the applicant."[15]  Defendants contend that JP and Trawick were enrolled as distributors in violation of Section 4.30 because Hamilton filled-out their online applications on their separate behalves.  Defendants therefore conclude that enforcement of the forum selection clause, housed within the same Policies and Procedures of the distributor agreement, is unenforceable.

Plaintiff raises two arguments as to why the forum selection clause should still apply:  1) Hamilton was serving in the capacity of JP and Trawick's agent, and any knowledge he had of the provisions of the distributor agreement, including its forum section clause, is imputed to

---

[13] Docket No. 6, Ex. 6, § 9.3 (emphasis added).
[14] Def. Mem. Supp. Mot. Dismss. P.8-9.
[15] Docket No. 6, Ex. 6, § 4.30.

Defendants; 2) Defendants, by cashing PEC's commission checks, ratified the distributor agreement.[16]  These arguments will be addressed in sequence.

### 1.) Hamilton's Agency

The Court finds that Hamilton served as JP and Trawick's agent when he enrolled them as distributors in PEC.  An agency relationship arises "when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act."[17]  "The existence of an agency relationship is determined from all the facts and circumstances in the case."[18]

An agency relationship existed between Hamilton and Defendants JP and Trawick because the relationship met three factual elements: 1) there was a manifestation by JP and Trawick that Hamilton would act on their separate behalves; 2) Hamilton accepted the proposed undertaking; and 3) the parties understood that JP and Trawick had control over the undertaking.[19]  First, JP and Trawick manifested their assent to Hamilton acting on their behalves by entrusting Hamilton with their personal information, including their full names, mailing addresses, social security numbers, and credit card information, in an effort to enroll them as distributors in PEC.  Second, Hamilton manifested his assent to this undertaking by accepting Defendants' personal and financial information, entering it into his computer, and then submitting it to PEC.  Third, both parties fully understood that JP and Trawick had ultimate control over the undertaking because it was under their discretion and authority that the enrollment occurred; JP and Trawick had final say as to whether their personal information

---

[16] Pl. Mem. Opp. Mot. Dismiss. P.4.
[17] Restatement (Third) of Agency § 1.01; *see also Geman v. SEC*, 334 F.3d 1183, 1189 (10th Cir. 2003).
[18] Restatement (Third) of Agency § 1.01.
[19] *See Stamper v. Johnson*, 232 P.3d 514, 518 (Utah 2010).

would be submitted to PEC in order to obtain their respective distributorships.  Therefore, the Court finds that Hamilton was JP and Trawick's agent when he undertook the task of enrolling them as distributors.

### 2.) Ratification of The Distributor Agreement

Assuming, for sake of argument, that Hamilton violated PEC's Policies and Procedures by executing JP and Trawick's distributor agreements, Defendants nevertheless ratified these agreements by cashing commission checks from PEC or otherwise acting in conformance with the agreements.  "Ratification is the affirmance by a person of a prior act which did not bind him but which was done or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him."[20]  Under the doctrine of ratification, even voidable contracts may be binding.[21]  Moreover, when a principal claims the benefits of a contract made by his agent, he cannot later repudiate the agent's actions on the ground that they were unauthorized.[22]  "Accepting a contract and claiming the fruits thereof, the principal takes with whatever taint attaches to its origin."[23]

Defendants argue that ratification was not possible as a matter of law because Hamilton lacked apparent authority to perform the act which served as the basis for ratification.  In support of this contention, Defendants cite to *Ercanbrack v. Crandall-Walker Motor Co.*, in which the Utah Supreme Court held that ratification cannot occur in instances where the agent acts without "apparent authority" while engaging with a third party.[24]  Furthermore, Defendants rely upon language from *City Electric v. Dean Evans Chrysler-Plymouth* to bolster their claim that "apparent authority" is appraised by the third party to the transaction.[25]  Defendants contend

---

[20] Restatement (Second) of Agency § 82.
[21] Restatement (Second) of Contracts § 85.
[22] *Floor v. Mitchell*, 86 Utah 203, 41 P.2d 281 287 (Utah 1935).
[23] *Id*.
[24] 550 P.2d 723, 725 (Utah 1976).
[25] 672 P.2d 89, 90 (Utah 1983).

that, from PEC's perspective, Hamilton had neither apparent nor actual authority when he violated the company's terms and conditions.

However, *Ercanbrack* and *City Electric* are both factually distinct from the present action, and Defendants misstate the central holdings in these cases. Importantly, neither *Ercanbrack* nor *City Electric* addresses ratification as it pertains to a distributor agreement; rather, both cases involve causes of action that arise out of single commercial transactions. In *Ercanbrack*, the dispute arose out of a vehicle purchase[26], and in *City Electric*, out of the sale of electrical materials to a restaurant.[27] The distributorship agreement in the instant action departs from these temporary transactions because it governs a potentially long-term business relationship.

Moreover, contrary to Defendants' interpretation, *Ercanbrack* and *City Electric* both stand for the proposition that it is the principal, not the third party, whose knowledge of the agent's conduct determines whether "apparent authority" exists. The balance of the holding in *Ercanbrack* states that "ratification of an act about which the principal knows nothing is inherently impossible."[28] Such language clearly indicates apparent authority is ascertained from the perspective of the principal, not of the third party. *City Electric* reiterates this idea with even greater clarity. There, the court held that "it is the principal who must cause third parties to believe that the agent is clothed with apparent authority."[29]

JP and Trawick, as principals, not only knew of Hamilton's act of enrolling them as distributors; they expressly authorized him to do so. Hamilton's authority emanated from JP and Trawick's conduct, when they purposely gave him their personal and financial information to

---

[26] 550 P.2d at 723.
[27] 672 P.2d at 89.
[28] 550 P.2d at 725.
[29] 672 P.2d at 89.

send to PEC as part of their distributor agreement. Although Defendants argue that Hamilton, from PEC's perspective, did not have apparent authority to contract on JP and Trawick's behalves, PEC's knowledge was inconsequential. JP and Trawick's knowledge alone was sufficient to establish Hamilton's apparent authority. Therefore, ratification was still possible because Hamilton had apparent authority to execute JP and Trawick's agreements. Moreover, ratification in fact occurred because Defendants either cashed thousands of dollars worth of commission checks sent from PEC or otherwise acted in reliance on the distributor agreement. Defendants must therefore accept whatever taint attached to the origins of these fruits.

            T & W as Assignee

Consequently, the forum selection clause is also enforceable with respect to T & W since Trawick transferred his rights and obligations to T & W when he made T & W the assignee of his downline organization. When a party assigns a property interest to another party, the assignee "stands in the shoes" of the assignor for purposes of performance of the contract.[30] The relationship between the assignee (T & W) and the obligor (PEC) is "a continuation of the rights and liabilities of the assignor" (Trawick).[31] Therefore, since the Court has found that Trawick consented to the forum selection clause, T & W, subject to the same liabilities as Trawick, necessarily was bound by the same forum selection clause.

In sum, the Court finds that all Defendants have submitted to personal jurisdiction and venue in Utah by consenting to PEC's forum selection clause.

B.) Personal Jurisdiction

Even if the forum selection clause were unenforceable with respect to Hannah, JP, Trawick, and T & W, the Court still has specific personal jurisdiction over these individuals and

---

[30] *Sunridge Dev. Corp. v. RB & G Eng'g, Inc.*, 230 P.3d 1000, 1004 (Utah 2010).
[31] *Id.*

entity. Where jurisdiction cannot be established by clear and express language of a mandatory

forum selection clause, a party may still establish personal jurisdiction through a due process

analysis as set forth in *International Shoe*.[32]  In resolving challenges to this Court's personal

jurisdiction, "[t]he plaintiff bears the burden of establishing personal jurisdiction over the

defendant."[33]  As the Tenth Circuit has set forth previously, "[w]hether a non-resident defendant

has the requisite minimum contacts with the forum state to establish in personam jurisdiction is

decided on the particular facts of each case."[34]

> However, in the preliminary stages of litigation, the plaintiff's burden is light.
> Where a district court considers a pre-trial motion to dismiss for lack of personal
> jurisdiction without conducting an evidentiary hearing, the plaintiff need only
> make a prima facie showing of personal jurisdiction to defeat the motion.  The
> plaintiff may make this prima facie showing by demonstrating, via affidavit or
> other written materials, facts that if true would support jurisdiction over the
> defendant.  When evaluating the prima facie case, the court is bound to resolve all
> factual disputes in favor of the plaintiff in determining whether he has made the
> requisite showing.[35]

This burden further entails the plaintiff showing that "'jurisdiction is legitimate under the

laws of the forum state and that the exercise of jurisdiction does not offend the due process

clause of the Fourteenth Amendment.'"[36]  "It is frequently helpful to undertake the due process

analysis first, because any set of circumstances that satisfies due process will also satisfy the

long-arm statute."[37]

To satisfy the constitutional requirement of due process there must be "minimum

contacts" between the defendant and the forum state.[38]  The "minimum contacts" standard may

be met by a finding of either general jurisdiction or specific jurisdiction.  As there is no

---

[32] *See World-Wide Volkswagen Corp.*, 444 U.S. at 291.
[33] *Behagen v. Amateur Basketball Ass'n of the United States*, 744 F.2d 731, 733 (10th Cir. 1984).
[34] *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 455 (10th Cir. 1996).
[35] *AST Sports Science, Inc. v. CLF Distribution Ltd.*, 514 F.3d 1054, 1056-57 (10th Cir. 2008).
[36] *Soma Med. Int'l v. Standard Chartered Bank*, 196 F.3d 1292, 1295 (10th Cir. 1999) (quoting *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir. 1995)).
[37] *Systems Designs, Inc. v. New Customward Co.*, 248 F.Supp. 2d 1093, 1097 (D. Utah 2003).
[38] *World-Wide Volkswagen Co.*, 444 U.S. at 291.

allegation that Defendants' contact with Utah was systematic or continuous so as to give rise to general jurisdiction, the Court will confine its analysis to the standards set forth for specific jurisdiction. Courts may exercise specific jurisdiction in cases where the "defendant has 'purposely directed' his activities at residents of the forum," and those activities have given rise to the underlying action.[39] In order for the Court to find specific jurisdiction, there must be "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[40]

    1.) Minimum Contacts

Plaintiff argues that specific personal jurisdiction over Defendants is proper because Defendants have had substantial contact with Plaintiff in Utah by telephone and email, and they have made use of and gained benefit from the laws and processes of this State by taking commission checks from a Utah company, attending company meetings, and accepting awards from the Utah based company for recruiting hundreds of members.[41]

Defendants respond by noting that although Plaintiff alleges that JP was in almost daily contact with PEC, the record is silent as to the substance of those conversations, and even if such contacts support personal jurisdiction as to JP, they indicate nothing with regard to personal jurisdiction over Hannah, Trawick, or T & W.[42] Relying primarily upon this Court's decision in *Harnischfeger Engineers, Inc. v. Uniflo Conveyor, Inc.*,[43] Defendants distinguish the activities of the Kansas corporation in that case with Defendants' contact with PEC in the present instance to show that Defendants' contacts were isolated and sporadic.

---

[39] *In re Application to Enforce Admin. Subpoenas Duces Tecum of SEC. v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472-73 (1985).
[40] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (citation omitted).
[41] Docket No. 6.
[42] Docket No. 10.
[43] 883 F.Supp. 608 (D.Utah 1995).

However, the Court finds *Procter & Gamble Co. v. Haugen* more illustrative in this matter. In *Procter & Gamble*, this Court held that Utah contacts by a Texas distributor in a national network marketing business were sufficient to meet the minimum contacts requirement for specific jurisdiction based upon: 1) his numerous telephonic communications to individuals in Utah in furtherance of his distributor business; 2) his attendance at seminars and informal mentoring sessions in Utah; 3) his speaking engagements in Utah; and 4) his interactions with upline distributors in furtherance of their common aims in the multi-level marketing business.[44] JP, Hannah, and Trawick, unlike the Texas distributor, never visited Utah on official PEC business, and although JP attended PEC seminars and received an award from PEC's owner on stage in Atlanta, none of these seminars or ceremonies took place in Utah.

Importantly, however, JP, Hannah, and Trawick all promoted their business to down-line recruits and they each contacted PEC in furtherance of developing their distributorship by phone or email. While Defendants are correct to note that telephone calls and emails do not, in and of themselves, constitute sufficient minimum contacts,[45] "[i]n proper circumstances, even a single letter or telephone call to the forum state may meet due process standards."[46] "The exercise of jurisdiction depends on the nature of those contacts."[47]

In this case Defendants intentionally reached out to Plaintiffs in Utah to develop their respective multi-level marketing businesses: JP inquired about product shipment prior to becoming a distributor and then was in daily contact with PEC; Hannah relayed information about sponsoring new distributors for PEC in five separate emails; and Trawick called a customer service representative at PEC's home office in Utah to transfer his downline

---

[44] 179 F.R.D. 622, 629 (D.Utah 1998), *aff'd. in part*, 222 F.3d 1262 (10th Cir. 2000).
[45] See *Pro Axcess, Inc. v. Orlux Distribution, Inc.,* 428 F.3d 1270, 1278 (10th Cir. 2005) (holding that the "'quantum of contacts' between the parties is not determinative of personal jurisdiction," rather it is the "content of these communications" that supports the exercise of personal jurisdiction.)
[46] *Rambo v. American Southern Ins. Co.,* 839 F.2d 1415, 1418 (10th Cir. 1988).
[47] *Id.*

organization to his company, T & W. T & W therefore became an assignee of Trawick's property interest in PEC and assumed Trawick's full contractual rights and liabilities under the distributor agreement.[48] Moreover, Defendants collectively received and cashed several thousand dollars worth of commission checks from PEC in reliance on their distributor agreement. The content of these contacts with Utah indicate that all Defendants intentionally reached out to transact business with PEC in Utah. Moreover, Defendants purposely availed themselves of the financial benefit of their agreement with a Utah company. Because Defendants' actions formed the basis of PEC's claims, they in turn established the requisite minimum contacts to satisfy due process.

2.) "Fair Play and Substantial Justice"

Once it is found that Defendants had adequate minimum contacts with the forum state, the Court must next determine whether personal jurisdiction is reasonable in light of the circumstances surrounding the case, or, in other words, whether exercising jurisdiction would not offend traditional notions of "fair play and substantial justice."[49]

> Courts consider the following factors to decide whether exercise of jurisdiction is reasonable: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive policies.[50]

Defendants contend that exercising personal jurisdiction would be fundamentally unfair because it would impose an unnecessary burden on the Defendants by forcing them to litigate in Utah, whereas Plaintiff, a multi-million dollar corporation, is better situated to travel the 2,000

---

[48] *See supra* p. 11
[49] *Burger King*, 471 U.S. at 476.
[50] *Bell Helicopter v. Heliqwest Intern., Ltd.*, 385 F.3d 1291, 1296 (10th Cir. 2004).

mile distance to litigate in Georgia.  Furthermore, Defendants argue, litigating in Utah would provide a less efficient means of resolving the conflict than would holding court in Georgia.

Plaintiff responds by stating that Utah has an express public policy interest in hearing disputes in connection with tort claims made by its residents, and that Utah has a particular interest in resolving this contractual dispute that is based on the presence of a well-respected national company operating here.

As the Tenth Circuit has noted, the analyses of minimum contacts and reasonableness are complimentary, such that

> the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on [minimum contacts], the less a defendant need show in terms of unreasonableness to defeat jurisdiction. The reverse is equally true: an especially strong showing of reasonableness may serve to fortify a borderline showing of [minimum contacts].[51]

In this case, the Court has determined that Defendants "purposefully directed [their] activities" at Utah.[52]  In such a case, "where a defendant . . . seeks to defeat jurisdiction, [it] must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable."[53]  As set forth below, Defendants cannot meet this exacting standard.

### a.)  Defendants' Burden

While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction. Given the fact that Defendants' minimum contacts are sufficient for Due Process and those contacts have, in part, given rise to the stated cause of action, other factors, such as Utah's interest in

---

[51] *Pro Axcess, Inc.*, 428 F.3d at 1280.
[52] *Burger King,* 471 U.S. at 477.
[53] *Id*.

adjudicating the dispute and Plaintiffs' interest in obtaining convenient and effective relief, weigh more heavily against this concern.[54]

### b.) Forum State's Interest

"States have an important interest in providing a forum in which their residents can seek redress for injuries caused by out-of-state actors."[55] "The state's interest is also implicated where resolution of the dispute requires a general application of the forum state's laws."[56] In this case, Utah has an interest in providing a company, with its principal place of business in Utah, with a forum for suits arising from that business. Therefore, this factor favors Utah's exercise of jurisdiction over Defendants.

### c.) Plaintiff's Interest

This factor hinges on whether the Plaintiff may receive convenient and effective relief in another forum. This factor may weigh heavily in cases where a Plaintiff's chances of recovery will be greatly diminished by forcing him to litigate in another forum because of that forum's laws or because the burden may be so overwhelming as to practically foreclose pursuit of the lawsuit.[57] Although Plaintiff's chance of recovery would not be greatly diminished by litigating in Georgia, neither would Defendants' chance of recovery be compromised by holding court in Utah. Therefore, this factor is neutral with regard to exercise of jurisdiction.

### d.) Most Efficient Forum

This factor asks "whether the forum state is the most efficient place to litigate the dispute."[58] "Key to this inquiry are the location of witnesses, where the wrong underlying the

---

[54] See *Conlin Enterprise Corp. v. Snews LLC*, 2008 WL 803041 at *8 (D.Utah 2008) (finding a determination that there are sufficient "minimum contacts" with the forum state presumes that jurisdiction will not violate "traditional notions of fair play and substantial justice.")
[55] *OMI Holdings, Inc. v. Royal Ins. Co. of Canada*, 428 F.3d 1086, 1096 (10th Cir. 2005).
[56] *Id.*
[57] Pro Axcess, Inc., 428 F.3d at 1281.
[58] *OMI*, 428 F.3d at 1096.

lawsuit occurred, what forum's substantive law governs the case, and whether jurisdiction is necessary to prevent piecemeal litigation."[59]  While Defendants contend that efficiency would be compromised by having to collect witnesses from Georgia and travel a 2,000 mile distance to Utah, the same difficulty would arise with respect to Utah witnesses in this case.  Therefore, this factor is also neutral with regard to jurisdiction.

e.)  Substantive Policies

The fifth factor of the reasonableness inquiry "focuses on whether the exercise of personal jurisdiction by [the forum] affects the substantive social policy interests of other states or foreign nations."[60]  There is nothing here to suggest that jurisdiction in Utah affects the substantive social policy interests of Georgia. Therefore, this factor weighs in favor of jurisdiction in Utah.

Based on the foregoing, although Defendants face financial hardship, the remaining factors of "fair play and substantial justice" corroborate the Court's finding of adequate minimum contacts; therefore, exercising personal jurisdiction over Defendants would be reasonable in light of the circumstances.

In sum, because Defendants have had sufficient minimum contacts with Utah and exercising personal jurisdiction would comport with "substantial justice and fair play," Defendants' motion to dismiss for lack of personal jurisdiction will be denied.

C.)  Venue and Transfer

Although personal jurisdiction has been established, the Court must still determine whether the district court of Utah is a proper forum for this dispute, or, alternatively, whether venue should be transferred to a district court in Georgia.  A motion to transfer venue for *forum*

---

[59]*Id.* (citations omitted).
[60]*Id.*

*non conveniens* is governed by 28 U.S.C. § 1404(a), which provides: "For the convenience of parties and witnesses, and in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." "The party moving to transfer a case pursuant to § 1404(a) bears the burden of establishing that the existing forum is inconvenient."[61]

In determining whether to transfer this matter, the Court must make two determinations. First, the Court must determine whether this action could have been brought in the proposed transferee district, the District of Georgia. The mandatory forum selection clause contained within PEC's distributor agreement forecloses all Defendants' from litigating this matter in Georgia. Therefore, Defendants cannot meet this first requirement.

Second, even if Defendants could bring this action to a Georgia forum, the Court must still consider whether it is for the convenience of the parties and witnesses, and in the interest of justice, to transfer this matter. This is an individualized, case-by-case, determination.[62] The Court considers a number of factors in considering the convenience and fairness of transferring a matter, including:

> the plaintiff's choice of forum; the accessibility of witnesses and other sources of proof, including the availability of compulsory process to insure attendance of witnesses; the cost of making the necessary proof; questions as to the enforceability of a judgment if one is obtained; relative advantages and obstacles to a fair trial; difficulties that may arise from congested dockets; the possibility of the existence of questions arising in the area of conflict of laws; the advantage of having a local court determine questions of local law; and, all other considerations of a practical nature that make a trial easy, expeditious and economical.[63]

Not all are relevant to the instant action, but the Court considers the following factors as they are presented in this case.

---

[61] *Chrysler Credit Corp. v. Country Chrysler, Inc.*, 928 F.2d 1509, 1516 (10th Cir. 1991).
[62] *Id.*
[63] *Texas Gulf Sulphur Co. v. Ritter*, 371 F.2d 145, 147 (10th Cir. 1967).

### 1.) Plaintiff's Choice of Forum

The Tenth Circuit has long held that "unless the evidence and the circumstances of the case are strongly in favor of the transfer the plaintiff's choice of forum should not be disturbed."[64] Thus, the Court must give great weight to Plaintiff's choice of forum.[65]   Here, PEC's decision to bring this action before the District Court of Utah should be given great weight.   Defendant, however, argues that venue in the District of Utah is improper because all of the Defendants reside in Georgia, and the alleged actions giving rise to the claims in this case did not occur in Utah.   But, contrary Defendants' argument, Defendants, as mentioned above, contacted PEC in Utah on several occasions in furtherance of their cross-recruiting activities with downline distributors.   Therefore, because "a substantial part of the events or omissions giving rise to the claim" occurred in the District of Utah, this factor weighs in favor of proper venue in Utah.[66]

### 2.) Accessibility of Witnesses and Other Sources of Proof

Both parties assert that this factor weighs in their favor.   Defendants allege that "the majority, if not all of the relevant witnesses . . . live in Georgia and other southern states."[67] Plaintiff claims that "[i]t is likely that just as many, if not more, Utah witnesses will be required . . . ."[68]   While Defendants contend that subpoenaing witnesses in Georgia and transporting them 2000 miles to testify in Utah would create an undue burden on Defendants, the inconvenience of gathering witnesses and proof in Utah to litigate in Georgia would likely be just as great. "Merely shifting the inconvenience from one side to the other . . . is not a permissible justification for a change of venue."[69]   Therefore, this factor is neutral with regard to venue.

### 3.) Cost

---

[64] *Id.*
[65] *KCJ Corp. v. Kinetic Concepts, Inc.*, 18 F. Supp. 2d 1212, 1214 (D. Kan. 1998).
[66] See 28 U.S.C. 1391(a)(2).
[67] Docket No. 6, at 16.
[68] Docket No. 7, at 8.
[69] *Scheidt v. Klein*, 956 F.2d 963, 966 (10th Cir. 1992).

Defendants contend that the cost associated with litigation, including discovery work, trial preparation, and conducting the actual trial, will be greatly reduced if these proceedings take place in Georgia, and that the multi-million dollar Plaintiff corporation is in a better position to fund cross-country litigation than are Defendants. Financial disparity is a significant factor in this instance; however, it is not dispositive. Defendants have not presented sufficient evidence to indicate that litigating in Utah would cost more than in a Georgia forum. In other words, Defendants have failed to establish that the cost discrepancy between litigating in Georgia and Utah would effectively deny Defendants their day in court. Therefore, this factor is neutral with regard to transfer.

Accordingly, based upon the foregoing, Defendants have failed to meet their burden to show that it is for the convenience of the parties and witnesses, and in the interest of justice to transfer this matter.

## IV. CONCLUSION

Based on the foregoing, it is hereby

ORDERED that Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and Improper Venue and Defendants' Motion to Transfer (Docket No. 5) is DENIED. It is further

ORDERED that Defendants' Motion to Strike (Docket No. 12) is DENIED.

DATED this 28th day of June, 2011.

BY THE COURT:

_____

TED STEWART
United States District Court Judge